UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| SUSAN TAMBURRO,<br><br>        Plaintiff,<br><br>        v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of the Social<br>Security Administration,<br><br>        Defendant. | Case No. CV 08-4417 AJW<br><br>MEMORANDUM OF DECISION |

Plaintiff filed this action seeking reversal of the decision of defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's application for supplemental security income ("SSI") benefits. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

**Administrative Proceedings**

Plaintiff filed an application for SSI benefits on October 4, 2005, alleging that she became disabled on June 11, 2002, due to a back disorder, status-post leg fracture, affective mood disorder, and alcohol addiction disorder. [JS 2]. In a March 28, 2008 hearing decision that constitutes the Commissioner's final decision in this matter, an administrative law judge ("ALJ") concluded that plaintiff was not disabled because she retained the residual functional capacity ("RFC") to perform her past relevant work as a short order cook and cashier. [Administrative Record ("AR") 17, 21-22].

**Standard of Review**

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or is based on legal error. Stout v. Comm'r, Social Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)(internal quotation marks omitted). The court is required to review the record as a whole and to consider evidence detracting from the decision as well as evidence supporting the decision. Robbins v. Social Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006); Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citing Morgan v. Comm'r of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir.1999)).

**Discussion**

**Treating psychiatrist**

Plaintiff contends that the ALJ's reasons for rejecting the controverted opinion of her treating psychiatrist, Carlos Pieroni, M.D., are legally insufficient. [See JS10].

Where the opinion of a treating or examining physician is uncontroverted, the ALJ must provide clear and convincing reasons, supported by substantial evidence in the record, for rejecting it. If contradicted by that of another doctor, a treating or examining source opinion may be rejected for specific and legitimate reasons that are based on substantial evidence in the record. Batson v. Comm'r of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); Tonapetyan v. Halter, 242 F.3d 1144, 1148-49 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830-831 (9th Cir. 1995).

On November 7, 2005, Dr. Pieroni completed a mental disorder questionnaire form. [AR 226-230]. He stated that he first examined plaintiff on September 25, 2005. Dr. Pieroni's questionnaire responses appear to be based in part on his observations of plaintiff at her appointments and in part on plaintiff's self-reported history and subjective symptoms. [See, e.g., AR 226 ("[M]annerisms appear fairly normal though client seems nervous and tense often.  Appearance is fairly average . . . . [¶] Client reports history of deep

1  depressed moods and intense anger impulses. Auditory hallucinations, paranoid ideation - feelings of
2  'people out to get her,' suspiciousness, guardedness, agitation, guilt feelings, memory deficits, forgetfulness.
3  'I cry and laugh for no reason,' 'I'm so forgetful that I sometimes forget where I am,' 'I misplace or lose
4  things and accuse others of taking them.' All these problems since childhood.")]. Dr. Pieroni gave a
5  diagnosis of psychotic disorder not otherwise specified ("NOS"). [AR 230]. He noted that plaintiff was
6  taking Risperdal, an antipsychotic medication, 0.25 milligrams per day, and Zoloft, an antidepressant, 50
7  milligrams per day. [AR 230]. Dr. Pieroni indicated that he expected significant improvement in plaintiff's
8  condition "around June 26, 2006," that is, about 9 months from the date he began treating her. [AR 230].

9        The ALJ articulated four reasons for declining to give Dr. Pieroni's November 2005 opinion "much
10  weight." [AR 18-19]. First, the ALJ reasoned that Dr. Pieroni "had only been seeing the claimant for about
11  six weeks," and "[t]herefore, there is no longitudinal treatment history to support any long-term knowledge
12  of the claimant's status." [AR 18]. Treating source opinions are given more weight because those sources
13  are likely to be most able to provide a "detailed, longitudinal picture" of the claimant's medical impairments,
14  and the length, frequency, nature and extent of treatment are among the factors weighed in evaluating
15  treating source opinions. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); see Lester, 81 F.3d at 832-833.
16  While six weeks is not a lengthy treatment relationship, it is not too brief a period to qualify Dr. Pieroni
17  as a treating physician whose opinion is, or at least may be, entitled to deference. In contrast, Dr.
18  Malancharuvil, the medical expert whose opinion the ALJ adopted, never treated or even examined plaintiff.
19  [AR 21]. See Le v. Astrue, 529 F.3d 1200, 1201 (9th Cir. 2008)( "It is not necessary, or even practical, to
20  draw a bright line distinguishing a treating physician from a non-treating physician. Rather, the relationship
21  is better viewed as a series of points on a continuum reflecting the duration of the treatment relationship and
22  the frequency and nature of the contact.")(quoting Benton v. Barnhart, 331 F.3d 1030, 1038 (9th Cir.2003));
23  Ghokassian v. Shalala, 41 F.3d 1300, 1303 (9th Cir. 1994) (holding that a physician was the claimant's
24  treating physician, and therefore that his conclusions should have been granted deference, where the
25  claimant saw that physician twice within a 14-month period, saw no other doctors during that period,
26  requested that the physician treat him, and the physician referred to the claimant as "my patient").
27  Therefore, the length of plaintiff's treatment relationship with Dr. Pieroni was not a valid reason for
28  rejecting his opinion in favor of that of the nonexamining medical expert.

1    Second, the ALJ concluded that Dr. Pieroni indicated that plaintiff would not meet the twelve-month
2    duration requirement for SSI benefits. In his November 2005 report, Dr. Pieroni said that plaintiff's
3    condition could be expected to improve around June 26, 2006, about nine months after the date of her first
4    appointment with him on September 26, 2005. [AR 230]. The ALJ inferred that plaintiff's mental
5    impairment had lasted, or was expected to last, for only the nine-month period from September 26, 2005
6    to June 26, 2006. That inference is unwarranted in light of the record as a whole. Dr. Pieroni did not say
7    when he believed plaintiff's mental impairment arose. He did not suggest that plaintiff's mental impairment
8    actually *began* on the day of her first visit to him, nor does his initial evaluation report support such an
9    inference. In that report, which is dated September 26, 2005, Dr. Pieroni noted that plaintiff reported that
10   she had experienced mental problems similar to her then-current symptoms since childhood. Both plaintiff
11   and her boyfriend, who accompanied her to the initial appointment with Dr. Pieroni, said that she had been
12   experiencing mood swings, depression, anger problems, and paranoia for years. [See AR 310]. On her
13   application for SSI benefits, plaintiff alleged that she became disabled in June 2002. [AR 76].

14   Plaintiff's testimony and medical records indicate that she continued to see Dr. Pieroni for
15   psychiatric treatment at least through January 2008. [AR 273, 280, 288, 291, 367]. In October 2006, he
16   noted that plaintiff was "improving," although she still exhibited psychotic symptoms. [AR 273]. She
17   remained sober. Her diagnoses and medication were unchanged. [AR 273]. During the January 2008
18   hearing, plaintiff testified that she continued to see the psychiatrist she began seeing in 2005 (that is, Dr.
19   Pieroni) every 1 - 2 months. [AR 367, 380].

20   Viewing the record as a whole, substantial evidence does not support the ALJ's determination that
21   Dr. Pieroni's November 2005 report indicated that plaintiff's impairment did not meet the durational
22   requirement.

23   The third reason given by the ALJ for rejecting Dr. Pieroni's opinion was that "it appears as if [his]
24   responses to the mental disorder questionnaire form are based on the claimant's reported complaints and
25   not based on signs, symptoms, and findings. Many of the questions are answered with 'the client says,' or
26   'she reports,' and [are] not based on Dr. Pieroni's findings from an examination of the client." [AR 19].
27   Reasoning that "it is impossible to know how much of the report is based on [plaintiff's] allegations and
28   how much is based on [Dr. Pieroni's] findings and professional opinions," the ALJ rejected Dr. Pieroni's

opinion in its entirety. [AR 19].

The ALJ's criticism may be partly justified but is overbroad. There is some ambiguity in Dr. Pieroni's November 2005 report because it is not clear whether he actually endorsed all of the subjective symptoms he described. Dr. Pieroni's report, however, does not rely exclusively on plaintiff's subjective symptoms. As previously noted, Dr. Pieroni included some of his own clinical observations on the November 2005 report. In addition, treatment records from Dr. Pieroni contain mental status examination findings that generally are consistent with the diagnoses and the subjective symptoms described in that report.

In September 2005, for example, Dr. Pieroni conducted a mental status examination. He found that plaintiff was in denial about her condition, was tense, and displayed little emotion. She had auditory hallucinations. She interpreted proverbs in a manner "contaminated by insecurity and paranoia." She exhibited deficits in attention and memory, and had limited insight and judgment. [AR 311]. Dr. Pieroni gave plaintiff diagnoses of psychotic disorder NOS and polysubstance dependence.[1] [AR 312]. He assigned plaintiff a current Global Assessment of Function ("GAF") score of 42, signifying serious symptoms, such as suicidal ideation or severe obsessional rituals, or any serious impairment in social, occupational, or school functioning, such as the absence of friends or the inability to keep a job. See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition ("DSM-IV") Multiaxial Assessment, 27-36 (rev. 2000)); see also Vargas v. Lambert, 159 F.3d 1161, 1164 (9th Cir. 1998)(describing a GAF score as "a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment"). Dr. Pieroni's treatment plan consisted of referrals for substance abuse counseling and anger management, prescriptions for Abilify and Zoloft, and medication follow-up. [AR 309, 312].

On November 16, 2005, Dr. Pieroni saw plaintiff for medication follow-up. Plaintiff had been off

---

[1] The diagnosis of polysubstance abuse concerns plaintiff's reported history of abusing alcohol, marijuana, and cocaine from her 20s until her mid-40s. Plaintiff, who was 47 years old at the time of the mental status examination, told Dr. Pieroni that she had been drug free for about a year, and had stopped using alcohol, her "substance of choice," about three months earlier. [AR 310-312].

1  Risperdal for a week. Her boyfriend described her condition as a "roller coaster." He said she had exhibited
2  major mood swings, insecurity, paranoia, and crying. [AR 298]. On mental status examination, Dr. Pieroni
3  found that plaintiff was tense and exhibited poor eye contact. She was fidgety and suspicious. Her speech
4  was emotional. Plaintiff's mood was anxious, and her affect was restricted. Her thought process was
5  abnormal. She displayed tight associations. Her insight and judgment were poor. She reported auditory
6  hallucinations. She had paranoid delusions. Dr. Pieroni increased plaintiff's dosage of Risperdal and
7  continued her on Zoloft. [AR 298]. Dr. Pieroni's mental status examination findings were consistent with
8  his diagnoses and with the subjective symptoms he described in his November 2005 questionnaire
9  responses.    The ALJ also failed acknowledge that Dr. Pieroni had a legitimate need to consider plaintiff's
10 subjective symptoms because, as one court explained,

11  "[a] psychiatric impairment is not as readily amendable to substantiation by objective
12  laboratory testing as a medical impairment. [C]onsequently, the diagnostic techniques
13  employed in the field of psychiatry may be somewhat less tangible than those in the field of
14  medicine . . . . When mental illness is the basis of a disability claim, clinical and laboratory
15  data may consist of the diagnosis and observations of professionals trained in the field of
16  psychopathology. The report of a psychiatrist should not be rejected simply because of the
17  relative imprecision of the psychiatric methodology or the absence of substantial
18  documentation, unless there are other reasons to question the diagnostic techniques.

19 Blankenship v. Bowen, 874 F.2d 1116, 1121 (6th Cir. 1989) (per curiam) (ellipses omitted)(holding that the
20 ALJ erred in rejecting an examining psychiatrist's assessment for lack of documented clinical findings)
21 (quoting Poulin v. Bowen, 817 F.2d 865, 873-874 (D.C. Cir. 1987)); see also Regennitter v. Comm'r of the
22 Social Sec. Admin., 166 F.3d 1294, 1298-1300 (9th Cir. 1999)(holding that an ALJ erred in rejecting an
23 examining psychologist's functional assessment on the grounds that the psychologist's conclusions were
24 inconsistent with the "benign" results of a mental examination, and because the physician took the
25 claimant's statements "at face value," where the psychologist interviewed and tested the claimant, made
26 findings that were consistent with his conclusions, and permissibly credited the claimant's subjective
27 complaints in the absence of any evidence that the claimant was malingering). In light of the record as a
28 whole, the ALJ overstated the degree to which Dr. Pieroni relied on plaintiff's subjective allegations and

6

understated the nature and extent of the clinical findings made by Dr. Pieroni.

The fourth reason given by the ALJ for rejecting Dr. Pieroni's opinion was "internal inconsistencies in the [November 2005] report." [AR 19]. The ALJ cited only one inconsistency: Dr. Pieroni's report said that plaintiff "cannot pay bills because she 'can't handle it,'" but he nonetheless concluded that plaintiff is competent to manage her own funds. [AR 19]. Those statements reflect an inconsistency between plaintiff's self-assessment and Dr. Pieroni's assessment, but that does not make Dr. Pieroni's opinion internally inconsistent (as might be the case if Dr. Pieroni himself had made conflicting statements about plaintiff's functional abilities).

Because Dr. Pieroni was a treating physician who did not rely blindly on plaintiff's subjective complaints, the ALJ should have resolved the ambiguity in Dr. Pieroni's November 2005 report by attempting to recontact him rather than by rejecting his opinion in favor of that of the nonexamining medical expert. See Mayes v. Massanari, 276 F.3d 453, 459-460 (9th Cir. 2001)(stating that the ALJ's duty to develop the record further is triggered where "there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence"); Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996)(stating that "[i]f the ALJ thought he needed to know the basis of" the treating physician's conclusions "in order to evaluate them, he had a duty to conduct an appropriate inquiry," and holding that the ALJ erred in failing to develop the record further concerning the basis for the treating physician's opinion).

For all of these reasons, the ALJ committed legal error in evaluating Dr. Pieroni's opinion, and the reasons given by the ALJ for rejecting that treating source opinion are not supported by substantial evidence in the record as a whole.

**Nonexamining physicians**

Plaintiff contends that the ALJ failed properly to consider the opinion of Dr. D. L. Carlson, a nonexamining state agency psychiatrist. [See JS 10-14].

The ALJ said that she had "considered the opinions of State Agency medical consultants as required by 20 C.F.R. 416.927(d) and Social Security Ruling 96-6(p)." [AR 21]. Administrative law judges "are not bound by findings made by State agency or other program physicians and psychologists, but they may not ignore these opinions and must explain the weight given to the opinions in their decisions." SSR 06-6p, 1996 WL 374180, at *2 (Jul. 2, 1996). The ALJ neither adopted Dr. Carlson's opinion nor provided reasons

for rejecting that opinion. [See AR 20].

Defendant's argument that the ALJ permissibly rejected Dr. Carlson's RFC findings and properly adopted the "slightly more restrictive" Psychiatric Review Technique ("PRT") findings made by Dr. Malancharuvil is spurious. [See JS 11-13].

The PRT requires the evaluator to rate a claimant's abilities in four broad functional areas: activities of daily living; social functioning; concentration, persistence, and pace; and episodes of decompensation. 20 C.F.R. §§ 404.1520a(c), 416.920a(c): [JS 12]. Defendant correctly asserts that PRT findings "do not constitute an RFC assessment." [JS 12]. See SSR 96-8p, 1996 WL 374184, at *4 (stating that PRT findings "are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process"). If the PRT findings establish that an impairment is severe but not of listing-level severity, the ALJ then must assess the claimant's RFC. See 20 C.F.R. §§ 404.1520a(d)(3), 416.920a(d)(3). "The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the PRTF." SSR 96-8p, 1996 WL 374184, at *4.

Dr. Carlson completed a PRT form on March 7, 2007 indicating that plaintiff had a severe affective disorder and a severe substance addiction disorder, in remission, causing no restrictions in activities of daily living; mild difficulties maintaining social functioning; moderate difficulties in maintaining concentration, persistence, and pace; and that there was insufficient evidence regarding episodes of decompensation. [AR 321-329]. The medical expert, Dr. Malancharuvil, testified that plaintiff had mild restrictions in activities of daily living; mild difficulties maintaining social functioning; mild to moderate difficulties in maintaining concentration, persistence, and pace; and no episodes of decompensation. [AR 370-371].

On the mental RFC assessment form, Dr. Carlson indicated that plaintiff was moderately limited in the ability to understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; complete a normal work day and work week without interruptions from psychologically-based symptoms; and perform at a consistent pace without an unreasonable number and length of rest periods. [AR 317-318]. Dr. Carlson opined that plaintiff retained the RFC for simple, repetitive tasks. [AR 319].

1    Dr. Malancharuvil, on the other hand, testified that plaintiff's mental functional limitations restricted
2 her to moderately complex tasks involving up to four to five step instructions, provided the jobs do not
3 require hypervigilance, operation of hazardous machinery, safety operations, or "highly fast paced work
4 such as rapid assembly line." [AR 371]. The ALJ adopted Dr. Malancharuvil's RFC assessment, which was
5 less restrictive than that of Dr. Carlson, notwithstanding Dr. Malancharuvil's "slightly more restrictive"
6 PRT findings. Plaintiff challenges the ALJ's RFC assessment at step four, but not her findings at steps two
7 and three utilizing the PRT.

8    For these reasons, plaintiff's argument that the ALJ erred in failing to explain his rejection of Dr.
9 Carlson's RFC assessment has merit.

10 **Past relevant work**

11    Plaintiff argues that the ALJ erred in finding that plaintiff can perform her past relevant work as a
12 "short order cook/cashier" because she posed an incomplete hypothetical question to the ALJ, and because
13 she erred in assessing plaintiff's mental functional capacity. [JS 14-19].

14    A claimant is "not disabled" if she retains the residual functional capacity to perform the "actual
15 functional demands and job duties of a particular past relevant job" or the "functional demands and job
16 duties of the occupation as generally required by employers throughout the national economy." Pinto v.
17 Massanari, 249 F.3d 840, 845 (9th Cir. 2001) (quoting SSR 82-62); see also Burch, 400 F.3d at 679; Villa
18 v. Heckler, 797 F.2d 794, 798 (9th Cir. 1986) ("The claimant has the burden of proving an inability to return
19 to his former type of work and not just to his former job."). Information from the DOT, or the testimony
20 of a vocational expert, may be used at steps four and five of the sequential evaluation to ascertain the
21 demands of an occupation as ordinarily required by employers throughout the national economy. SSR 82-
22 61, 1982 WL 31387, at *2; Pinto, 249 F.3d at 845-846; Villa, 797 F.2d at 798. Hypothetical questions posed
23 to the vocational expert must accurately describe all of the limitations and restrictions of the claimant that
24 are supported by substantial evidence in the record. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 886 (9th
25 Cir. 2006); Tackett v. Apfel, 180 F.3d 1094, 1101 (9th Cir. 1999).

26    The ALJ's hypothetical question was flawed because the ALJ did not properly evaluate the opinions
27 of Dr. Pieroni and Dr. Carlson. The ALJ's finding that plaintiff's RFC does not preclude performance of
28 her past relevant work as a short order cook and cashier is defective for the same reason. Accordingly, the

ALJ's finding that plaintiff cannot perform her past relevant work cannot stand.

## Conclusion

The Commissioner's decision is not supported by substantial evidence and contains legal error. A remand for further proceedings is the appropriate remedy because it is not clear that the ALJ would be required to award benefits if her errors were corrected. See Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2000)(holding that when a court reverses an administrative decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation," but that the district court erred in remanding for further administrative proceedings where the record, including the vocational expert's testimony, "clearly establishe[d] that [the claimant] cannot perform a sedentary job or any other substantial gainful work that exists in the national economy . . . .")(quoting INS v. Ventura, 537 U.S. 12, 16 (2002) (per curiam)); see also Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir.) (holding that the district court's decision whether to remand for further proceedings or payment of benefits is discretionary and is subject to review for abuse of discretion), cert. denied, 531 U.S. 1038 (2000). Accordingly, the Commissioner's decision is reversed, and the matter is remanded to the Commissioner for further administrative proceedings consistent with this memorandum of decision.

**IT IS SO ORDERED.**

January 8, 2010

_____
ANDREW J. WISTRICH
United States Magistrate Judge